IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Heidi M. Dawley, | ) | Case No. 8:20-cv-01133-RBH-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On October 25, 2012, Plaintiff filed an application for DIB, alleging an onset disability date of February 1, 2010.  [R. 167–69; *see* R. 13 (providing application date).]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").    [R. 53–88, 97–100.]    Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on December 16, 2015, ALJ Carl B. Watson conducted a de novo hearing on Plaintiff's claims.  [R. 30–52.]  The ALJ issued a decision

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

on March 23, 2016, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 10–29.]  Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review.  [R. 1–3.]

Plaintiff filed an action for judicial review in this Court on May 3, 2017.  [*See* R. 850.] On July 30, 2018, the Court reversed and remanded the Commissioner's final decision for further administrative action.  [R. 845–69.]

On October 22, 2019, the ALJ conducted another hearing on Plaintiff's claims. [R. 827–44.]  The ALJ issued a decision on January 7, 2020, finding Plaintiff not disabled under the Act.  [R. 805–25.]  At Step 1,[2] the ALJ found Plaintiff met the Act's insured-status requirements through December 31, 2015, and had not engaged in substantial gainful activity since February 1, 2010, the alleged onset date.  [R. 810, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe impairments: bipolar disorder, borderline personality disorder, and substance abuse.  [R. 811, Finding 3.]  The ALJ also found Plaintiff had the non-severe impairment of hypothyroidism.  [R. 811.]  At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 811, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the [RFC] to perform a full range of work at all exertional levels but

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

with the following nonexertional limitations: the claimant has the mental ability to perform work that needs little specific vocational preparation and needs little or no judgement to do simple duties that can be learned on-the-job in 30 days or less. Time off-task can be accommodated by normal employer-afforded breaks (e.g., a 15-minutes morning break, 30-minute lunch break, and 15-minute afternoon break). She must work in an environment where there is no interaction with the general public.

[R. 812–13, Finding 5.] At Step 4, the ALJ found that Plaintiff had no past relevant work. [R. 817, Finding 6.] Upon considering Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), however, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 818, Finding 10.] Thus, the ALJ found that Plaintiff had not been under a disability as defined by the Act from February 1, 2010, the alleged onset date, through December 31, 2015, the date last insured. [R. 818, Finding 11.]

Rather than submit exceptions to the Appeals Council, Plaintiff filed the instant request for judicial review on March 23, 2020. [Docs. 1; 16 at 2.]

## THE PARTIES' POSITIONS

Plaintiff asserts the ALJ's decision is not supported by substantial evidence and should be remanded. [Doc. 16.] Plaintiff argues that the ALJ committed reversible error by failing to properly explain the weight given to the medical opinions of record [*id.* at 13–16]; failing to account for Plaintiff's mental restrictions in the RFC [*id.* at 16–17]; and failing to properly evaluate Plaintiff's subjective complaints [*id.* at 18–19].

The Commissioner contends, however, that the ALJ's decision is supported by substantial evidence and should be affirmed. [Doc. 17.] The Commissioner argues that the ALJ properly evaluated the medical opinions of record [*id.* at 10–14]; accounted for all

3

of Plaintiff's credibly established mental impairments [*id.* at 14–15]; and properly evaluated Plaintiff's subjective complaints [*id.* at 15–16].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment

4

for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's RFC); *Brenem v. Harris*, 621 F.2d 688, 690–91 (5th Cir. 1980) (holding remand was appropriate

5

where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation.  *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207.

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five-Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and

8

work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or

her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

**D.    *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's RFC[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the RFC to do her past work. 20 C.F.R. § 404.1560(b).

**E.    *Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the

---

[4]RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a).

10

"grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by

12

clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations,

however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). Social Security Ruling ("SSR") 16-3p provides, "[i]n considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p Titles II and XVI: Evaluation of Symptoms In Disability Claims, 82 Fed. Reg. 49,462-03, 49,464 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion); *see also* SSR 16-3p, 82 Fed. Reg. at 49,463. First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce" the alleged symptoms. *Id.* (quoting *Craig*, 76 F.3d at 594); *see* SSR 16-3p, 82 Fed. Reg. at 49,463. Second, the ALJ must evaluate "the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities . . . or to function independently." SSR 16-3p, 82 Fed. Reg. at 49,464; *see* 20

C.F.R. § 404.1528 (noting that the ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence).

## APPLICATION AND ANALYSIS

**Opinion Evidence**

In reviewing the evidence related to Plaintiff's claim, the ALJ examined a psychological review form sent to the Charleston Dorchester Mental Health Center and dated April 2014. [R. 711–13.] The ALJ attributed the opinion expressed in the handwritten form to Dr. William Lamar Inson[6] and analyzed it as follows:

> Little weight was given to the portion of the April 2014 opinion of Dr. William Lamar Inson regarding marked restrictions in activities of daily living and social functioning since November 2014. Dr. Inson stated that the claimant used medications for mood swings associated with bipolar disorder, which were helpful and did not cause any known side effects (Exhibit 18F). At first glance, it would be impossible to issue an opinion dated April 2014 discussing conditions that would be severe at a future date. Additionally, this opinion is not consistent with or supported by other medical evidence in the file, particularly that of treatment records from Dr. Ison's own facility or records from East Cooper Medical Center, Charleston Center, and Charleston Country Detention Center. The medical evidence repeatedly showed that when the claimant was compliant with treatment and medications and not abusing substances, her mental status was within normal limits and she was able to cope effectively with life stressors. Additionally, the claimant testified at the current hearing that she had been sober for approximately four years, further suggestive of her ability to perform representative work as identified given the above [RFC] assessment.

---

[6] In the decision, the last name is sometimes spelled "Inson" and sometimes spelled "Ison."

[R. 817.]  The ALJ attributed another handwritten document, a January 2015 discharge form, to Dr. Inson.  [R. 815–16 (citing R. 768–69).]  However, Plaintiff asserts that the April 2014 opinion the ALJ attributed to Dr. Inson was actually given by Licensed Master Social Worker ("LMSW") William Cramer.  [Doc. 16 at 14 n.1.]  Plaintiff admits that if Mr. Cramer completed the psychological review form, "[t]his would make it *not* a treating source opinion, nor an 'acceptable medical source' opinion, but still an opinion worthy of full consideration by the ALJ."  [*Id.* (citing 20 C.F.R. § 404.1527(f)).]  The Commissioner, on the other hand, takes no position on whether the ALJ improperly attributed the psychological review form to Dr. Inson but states that "if the ALJ treated this opinion as a treating source opinion, any error was in [Plaintiff's] favor because, under Social Security regulations, treating source opinions generally receive greater weight."  [Doc. 17 at 10.]

Notably, the issue of whether the psychological review form was filled out by Dr. Inson or Mr. Cramer was raised previously to this Court in 2017, and the parties seemed to agree then that, although the ALJ had identified Dr. Inson as having filled out the psychological review form, it was actually Mr. Cramer who had completed the form.  *See Dawley v. Commissioner*, 8:17-cv-1151-RBH, Docs. 15 at 11–13; 16 at 7–10.  Indeed, previously, the Commissioner acknowledged that the ALJ had mistakenly attributed the April 2014 form to Dr. Inson, but the Commissioner nonetheless argued that because substantial evidence supported the weight the ALJ afforded the opinion, there was no basis to disturb the decision.  *Dawley*, 8:17-cv-1151-RBH, Doc. 16 at 8–10.  This court remanded on a different issue but directed the ALJ to consider Plaintiff's remaining allegations of error.  [R. 845–46, 869.]

At the hearing on October 22, 2019, the ALJ stated that the case had been remanded, further explaining,

> [I]t appears that [the district court's] primary concern is the RFC with the limitation of simple, routine, repetitive tasks, wherein the broad that means it had indicated moderate limitations in concentration, persistence and pace and so that's probably the reason they are remanding the case and/or that appears to be the key reason the case is remanded . . . .

[R. 829.]  During the course of the hearing, the ALJ did not inquire about Dr. Inson or Mr. Cramer.  [R. 829–44.]  And, as set forth above, in the decision dated January 2, 2020, the ALJ again attributed the opinion expressed in the psychological review form to Dr. Inson.  [R. 817.]  There is no indication as to why the ALJ found that Dr. Inson, and not Mr. Cramer, filled out the psychological review form, or if the ALJ even considered that issue on remand.

### Who Filled Out the Psychological Review Form?

Neither Plaintiff nor the Commissioner fully explains why there is a question as to who at the Charleston Dorchester Mental Health Center filled out the psychological review form.  However, the Court will briefly discuss why this question appears to be a legitimate concern.

The handwriting on the psychological review form is difficult to read.  [*See* R. 711–13.]  The signature at the bottom of the form is almost totally illegible, but the printed name beside the signature appears to be "William Lamar Inson."  [R. 713.]  The discharge form, which the ALJ also attributed to Dr. Inson, is in the same difficult-to-read handwriting.  [R. 768–69.]  The discharge form is also signed, and the first name appears

17

to read "Wm," but the last name is illegible. [R. 769.] On the line above the signature line, there is a space for the "Person participating in Discharge Summary/Transition Plan," and the names handwritten in that space appear to be "Wm Cramer / Dr. Kassur." [R. 769.] While not clearly legible, those names are consistent with the medical records. Based on the Court's review of the record, the various documentation from Plaintiff's visits to the Charleston Dorchester Mental Health Center are signed by either William Merritt Cramer, III, LMSW,[7] or Michael M. Kassur, M.D.[8] [R. 648–57, 714–25, 762–69.] Additionally, based on the Court's review, there is no reference to a Dr. William Lamar Inson anywhere in the record. Further, and of import here, the psychological review form does not indicate that William Lamar Inson is a doctor, as there is no designation of his professional qualification beside the signature or printed name. [R. 713.]

Accordingly, the legitimate questions raised by a comparison of the record and the ALJ's decision are: whether William Inson exists, whether he filled out the psychological review form, and whether he is a doctor or has some other degree or specialization.

### Analysis

Plaintiff does not entertain the idea that Dr. Inson filled out the psychological review form. She presumes that the form was filled out by Mr. Cramer and argues that the ALJ did not properly explain the weight given to the opinion. [Doc. 16 at 13–16.] And, as

---

[7] Mr. Cramer's electronic signature is found on pages 650, 651, 715, 717, 718, and 719 of the record.

[8] Dr. Kassur's electronic signature is found on pages 653, 655, 657, 715, 721, 723, 725, 763, 765, and 767 of the record.

stated, the Commissioner takes no position on who filled out the form but asserts "[t]he ALJ properly weighed the April 2014 opinion and substantial evidence supports the weight afforded to it."  [Doc. 17 at 13.]  The Court will first examine the scenario in which the ALJ correctly attributed the opinion to Dr. Inson and then the scenario in which the ALJ incorrectly attributed the opinion to Dr. Inson.  In either situation, remand is appropriate.

*If Dr. Inson Filled Out the Psychological Review Form*

Initially, if the ALJ correctly attributed the psychological review form to William Lamar Inson, and if he is a doctor, as the ALJ states, then the opinion expressed in the psychological review form is a medical opinion.  20 C.F.R. § 404.1513(a) (listing licensed physicians as "acceptable medical sources").[9]

SSR 96-2p[10] requires that when an ALJ assesses medical opinions, the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and . . . be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p Titles II and XVI:  Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 (July 2, 1996).  Moreover, ALJs are instructed to apply the factors provided in 20 C.F.R.

---

[9]Plaintiff's claim was filed in October 2012; therefore, a previous version of 20 C.F.R. § 404.1513 applies to her claim.

[10]SSR 96-2p has been rescinded in keeping with amendments to the regulations that apply to claims filed on or after March 27, 2017, and the rescission is effective for claims filed on or after that date.  Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017).  Because Plaintiff's claim was filed before the effective date of the rescission, SSR 96-2p applies here.

§ 404.1527—including the length and nature of the source's treatment relationship with the claimant, the supportability of the opinion, the opinion's consistency with the other evidence in the record, whether the source is a specialist, and any other factors that may support or contradict the opinion—to all medical opinions.  20 C.F.R. § 404.1527(c), (f).  More weight is generally given to the opinions of examining sources than to non-examining ones.  *Id.*  Additionally, more weight is generally given to opinions of treating sources than is given to opinions of non-treating sources, such as consultative examiners.  *Id.*  And, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  *Mastro*, 270 F.3d at 178 (internal quotation marks omitted).  Further, the determination of whether a claimant is disabled under the Act is a legal determination and ultimately one for the Commissioner, and not a medical source, to make.  20 C.F.R. § 404.1527(d)(1) (stating "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled").  A medical source opinion on that issue is not entitled to any special weight.  20 C.F.R. § 404.1527(d)(3).  ALJs are further prohibited from substituting their medical opinions for those of medical providers, which the Fourth Circuit recently referred to as the prohibited practice of the ALJ "playing doctor."  *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017).

The ALJ's analysis of Dr. Inson's opinion is not in compliance with the applicable rules.  For instance, it is not evident from the decision that the ALJ considered the factors provided in 20 C.F.R. § 1527(c).  The Fourth Circuit has recently reaffirmed that

> [t]he ALJ's failure to consider each of the Section 404.1527(c) factors [is] error. While an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion.

*Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 385 (4th Cir. 2021). Indeed, very similarly to *Dowling*, the ALJ in the instant case touched on only two of the § 404.1527(c) factors—supportability and consistency—in giving Dr. Inson's opinion little weight. [R. 817]; *cf. Dowling*, 986 F.3d at 385. In *Dowling*, "the ALJ never so much as acknowledged the existence of the Section 404.1527(c) factors." *Id.* at 385. Here, too, the ALJ merely stated that he had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527," but he never identified the factors themselves or demonstrated that they had been applied. [R. 813.] Indeed, based on the Court's review of the record and the dearth of references to Dr. Inson in the medical records, there might not be adequate information for the ALJ to properly consider the § 404.1527(c) factors as to Dr. Inson.

Thus, even if the ALJ has correctly attributed the psychological review form to Dr. William Lamar Inson, the undersigned recommends reversing the ALJ's decision and remanding for further proceedings.

*If Mr. Cramer Filled Out the Psychological Review Form*

If Plaintiff is correct, and Mr. Cramer, not Dr. Inson, completed the psychological review form, then the opinion expressed in the form was an opinion from a medical source, but not an "acceptable medical source" under the applicable regulations, as explained below.

21

The regulations and rulings applicable to Plaintiff's claim distinguish between opinions from "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513(d). SSR 06-03p[11] further discusses "other sources" as including both "medical sources who are not 'acceptable medical sources'" and "non-medical sources." SSR 06-03p Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 2006 WL 2329939, at *2 (Aug. 9, 2006). Only acceptable medical sources can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose opinions may be entitled to controlling weight. *Id.* Evidence from sources other than acceptable medical sources may be used to show the severity of a claimant's impairments and how it affects the claimant's ability to work. 20 C.F.R. § 404.1513(d). "The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case." SSR 06-03p, at *5. "Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." *Id.* When evaluating such a source, "the adjudicator generally should explain the weight given to [such] opinion[s] . . . or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6.

---

[11]SSR 06-03p has been rescinded in keeping with amendments to the regulations that apply to claims filed on or after March 27, 2017, and the rescission is effective for claims filed on or after that date. Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017). Because Plaintiff's claim was filed before the effective date of the rescission, SSR 06-03p applies here.

Licensed social workers are considered "medical sources who are 'not acceptable medical sources'" under SSR 06-03p.  *Id.* at *2.  Nevertheless, some of the same factors applicable to the consideration of opinions from "acceptable medical sources" can be applied to opinions from "other sources"—"[h]ow long the source has known and how frequently the source has seen the individual;" "[h]ow consistent the opinion is with other evidence;" "[t]he degree to which the source presents relevant evidence to support an opinion;" "[h]ow well the source explains the opinion;" "[w]hether the source has a specialty or area of expertise related to the individual's impairment(s); and" "[a]ny other factors that tend to support or refute the opinion."  *Id.* at *4–5.

In the instant matter, if Mr. Cramer completed the psychological review form, then the opinions expressed therein would not be entitled to controlling weight.  *See* SSR 06-03p, 2006 WL 2329939, at *2.  However, it stands to reason that if the ALJ attributed the opinion evidence to the wrong individual, then it would be very difficult to properly evaluate many of the listed factors set forth in SSR 06-03p—for example, those factors that are specific to Mr. Cramer or those factors that would require the ALJ to compare Plaintiff's history with Mr. Cramer to the opinions expressed in the psychological review form.  Thus, even if not entitled to controlling weight, those opinions might be entitled to greater than "little weight" if properly evaluated.  But, if Mr. Cramer completed the psychological review form, the ALJ's foundational factual error necessarily prevented him from creating a logical bridge between the evidence and his conclusions.  *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (noting that the ALJ "failed to 'build an accurate and logical bridge'").  If the ALJ improperly attributed the opinions in the psychological review form to a non-existent person, and Mr. Cramer actually provided those opinions, the Court cannot find the

ALJ's decision is supported by substantial evidence.  *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling.").

For all of the foregoing reasons, the Court cannot find that the ALJ's decision is supported by substantial evidence and that the proper legal standard was applied.  As such, it is recommended that this matter be reversed and remanded.

**Remaining Allegations of Error**

Because the Court finds that the ALJ erred in analyzing the opinion evidence and recommends remand on that basis, the Court declines to address Plaintiff's remaining allegations of error.  *See Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763 n.3 (W.D. Va. 2002).  *On remand, however, the Commissioner should consider Plaintiff's remaining allegations of error and the full contours of those arguments as articulated in the parties' briefs to this Court.*

## <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case be REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

April 29, 2021
Greenville, South Carolina